IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESS T. LAMMERS, | |
| Plaintiff, | 8:24CV225 |
| vs. | |
| COUNTY OF PHELPS NE, PHELPS COUNTY CORRECTIONS, and ADMIN PENNY GREGG, | MEMORANDUM AND ORDER |
| Defendants. | |

Plaintiff Jess T. Lammers ("Plaintiff" or "Lammers"), filed his Complaint on June 17, 2024, when he was in the custody of Phelps County Corrections ("PCC"). Filing No. 1. Plaintiff filed a notice of address change on December 5, 2024, Filing No. 13, indicating he was no longer incarcerated, and also filed a Motion for Leave to Proceed in Forma Pauperis, Filing No. 12. Upon review of Plaintiff's motion, the Court finds that Plaintiff is financially eligible to proceed in forma pauperis as a non-prisoner. The Court will now conduct an initial review of Plaintiff's Complaint, Filing No. 1, pursuant to 28 U.S.C. § 1915(e)(2).

I. SUMMARY OF COMPLAINT

Plaintiff sues Phelps County, Nebraska ("County"), PCC, and PCC Admin Penny Gregg ("Gregg") (collectively "Defendants"), alleging Defendants violated "their own handbook/Policy Manual and . . . Nebraska's minimum jail standards." Filing No. 1 at 1. Plaintiff alleges Gregg "is charged with training staff, writing PCC manual, and developing programs in line with min[imum] jail standards." *Id*. at 3. Plaintiff claims the County, PCC,

and Gregg "are in violation of minimum jail standards," and PCC "has failed to meet ADA (Americans with Disability Act) standards." *Id*. at 2–3 (capitalization corrected).

Plaintiff alleges he is disabled pursuant to the Americans with Disabilities Act ("ADA") and "Social Security deemed Lammers 100% disabled [on] May 2, 2020, because of abuse suffered in PCC" when he was confined there between April 30, 2020, to May 6, 2020. *Id*. at 2 (punctuation corrected). Plaintiff was admitted to PCC on May 12, 2024, and "[p]ursuant to jail standard 00.2.41 Lammers is segregated." *Id*. Also, "[p]ursuant to Page 9 and 10 of PCC Manual Lammers is offered 'Rec' but not 'passive rec,'" and he "has never been cleared by [a health care provider] for rec pursuant to PCC Manual." *Id*. Plaintiff alleges he "has been segregated and kept in cell 24 [hours] a day 7 days a week" in violation of Nebraska's minimum jail standard "Ch. 7 003.01" and "PCC has no mention of 'Passive Rec' in its manual nor has Lammers been offered 'Passive Rec'" in violation of "Ch. 7 003.05 of minimum jail standards." *Id*.

As relief, Plaintiff seeks Gregg's termination as PCC Administrator, "PCC's ICE contract cancelled," and $5 million in damages. *Id*. at 3.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim,

and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

Plaintiff names the County, PCC, and Gregg in her official and individual capacity as Defendants in this suit. As an initial matter, PCC is not a distinct legal entity subject to suit. See *Dan v. Douglas Cty. Dep't of Corr.*, No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("the Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names"); see also *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments

3

or subdivisions of local government are "not juridical entities suable as such"); *Marsden v. Fed. Bureau of Prisons*, 856 F.Supp. 832, 836 (S. D. N. Y. 1994) (jails are not entities amenable to suit). Accordingly, any claims against PCC are dismissed. For the reasons that follow, Plaintiff's Complaint fails to state a plausible claim for relief against either the County or Gregg, but the Court shall grant Plaintiff leave to amend his Complaint.

**A. 42 U.S.C. § 1983**

Liberally construed, Plaintiff may be asserting claims under 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

Plaintiff's claims against the County and Gregg in her official capacity are properly considered as claims against the County only. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). To prevail on a claim alleged against the County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901

4

F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699–700 (internal quotation omitted)).[1]

Plaintiff's Complaint does not contain any facts from which it might reasonably be inferred that the County had an unconstitutional policy or custom which caused the alleged violations of Plaintiff's rights. *Crumpley Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))). Rather, Plaintiff alleges that his rights were violated due to Defendants' failure to meet Nebraska's minimum jail standards. Such a claim, however, does not permit an inference of an unconstitutional policy or custom.

---

[1] A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

5

> The Jail Standards Board established within the Nebraska Commission on Law Enforcement and Criminal Justice is responsible for developing minimum standards for the construction, maintenance, and operation of criminal detention facilities by political subdivisions in Nebraska. *See* Neb. Rev. Stat. § 83-4,124 *et seq*.; *see also* Neb. Rev. Stat. § 47-101 (providing that Jail Standards Board shall prescribe rules for the regulation and government of county jails). The Board's "Standards for Jail Facilities" may be found at Title 81 of the Nebraska Administrative Code.

*Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at *4 (D. Neb. May 2, 2018).

Here, Plaintiff alleges the County and Gregg failed to meet minimum jail standards providing that "[i]nmates shall have opportunities for active physical exercise at least one (1) hour per day, five days per week outside their cells," 81 Neb. Admin. Code Ch. 7, § 003.01, and that "[p]rovisions shall be made for passive recreational activities," *Id*., § 003.05. "However, 'a violation of jail standards does not equate with a violation of the Constitution.'" *Nelson*, 2018 WL 2050571, at *5 (quoting *Henderson v. Greeley*, No. 6:13-CV-06137, 2015 WL 1280312, at *2 (W.D. Ark. Mar. 20, 2015)). "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Grayson v. Ross*, 454 F.3d 802, 812 (8th Cir. 2006) (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991) (per curiam)).

In other words, Plaintiff cannot bring a § 1983 action based solely upon alleged violations of Nebraska minimum jail standards. Thus, to the extent Plaintiff's § 1983 claim against the County and Gregg in both her official and individual capacities is premised on their failure to meet state jail standards, such claim fails as a matter of law.

Moreover, to the extent Plaintiff may be attempting to assert any constitutional claims based on his placement in segregation[2] and confinement to his cell for "24 [hours]

---

[2] Plaintiff alleged he was segregated "[p]ursuant to jail standard 00.2.41," Filing No. 1 at 2, which seems to refer to 81 Neb. Admin. Code Ch.1, § 002.41 defining segregation as "[c]onfinement of an inmate to secure housing separated from the general population."

6

a day 7 days a week," Filing No. 1 at 2, there are insufficient facts alleged in the Complaint from which the Court may infer a violation of Plaintiff's constitutional rights. First, it is unclear whether Plaintiff was a pretrial detainee or a convicted and sentenced prisoner during his confinement in PCC, and his status would determine what legal standard would apply to his claims.

A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment, under which a convicted and sentenced prisoner may be punished, as long as such punishment is not cruel and unusual. In contrast, a state pretrial detainee's challenge to such conditions is analyzed under the Due Process Clause of the Fourteenth Amendment, which requires that a pretrial detainee not be punished. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). To determine whether a pretrial detainee's conditions of confinement constitute "punishment," a plaintiff may show that such conditions are "intentionally punitive" or, in the absence of an "expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. at 907 (citing *Bell*, 441 U.S. at 536–39). If the conditions are found to be arbitrary or excessive, it may be "'infer[red] that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id*. (citing *Bell*, 441 U.S. at 539).

Here, Plaintiff does not allege any facts about the reasons for his placement in segregation, the length of time he spent in segregation, or the nature of his confinement in segregation apart from 24-hour confinement to his cell. Such sparse allegations are

7

insufficient to state a plausible claim for relief under either the Eighth or Fourteenth Amendment. The Court, however, will give Plaintiff leave to amend his Complaint to allege sufficient facts to state a plausible conditions-of-confinement claim to the extent such facts may be truthfully alleged.

**B. ADA**

Liberally construed, Plaintiff also appears to allege Defendants violated Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a). The ADA defines "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State." 42 U.S.C. § 12131(1). This term includes instrumentalities of a local government, such as county jails. *See Winters v. Arkansas Dep't of Health & Human Servs.*, 491 F.3d 933 (8th Cir. 2007) (ADA claim asserted against county sheriff in official capacity claiming discrimination on basis of mental illness while in county jail). Because prison officials may not be sued in their individual capacities under Title II of the ADA, the Court considers Plaintiff's ADA claim as being asserted against the County and Gregg in her official capacity only, which is simply another way of suing the County itself. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (Congress' designation of liability for "public entities" under Title II of the ADA necessarily implied that there was no liability for individuals under that statute) (citing *Transamerica Mortgage*

8

*Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)); *see also Dinkins v. Correctional Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam).

In order to state a plausible Title II claim under the ADA, Plaintiff must allege plausible facts indicating (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of PCC's services, programs, or activities, or was otherwise subjected to discrimination by PCC; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *see also Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

Here, Plaintiff alleges that he is "disabled," Filing No. 1 at 2, but he has not set forth any facts to show that he is a "qualified individual with a disability."[3]  *See Watson v. Kelloggs Co.*, No. 8:20CV126, 2020 WL 2732131, at *5 (D. Neb. May 26, 2020) ("Plaintiff's Complaint contains no facts describing the nature of his disability . . . . Without this basic information, no plausible claim for relief is stated."); *Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 (D. Neb. Apr. 10, 2020) (ADA plaintiff failed to state claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how. . . ."). Plaintiff also has not alleged facts showing that he was excluded from participation in or denied the benefits of PCC's services, programs, or activities, or was

---

[3] The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

otherwise subjected to discrimination *because of* his disability. Plaintiff merely alleges in general terms that he was not provided recreation or passive recreation, but he does not allege any facts suggesting that such denials or deprivations were because of his disability. However, the Court will give Plaintiff leave to file an amended complaint to remedy these deficiencies, if he is truthfully able to do so.

**C. Improper Relief Requested**

Finally, in addition to damages, Plaintiff seeks Gregg's termination as PCC Administrator and the cancellation of "PCC's ICE contract." Filing No. 1 at 3. However, the equitable relief Plaintiff requests is not available to him.

First, this Court lacks authority to terminate Gregg's employment with the County as the PCC Administrator. "Courts do not have authority to terminate the employment of individual Defendants." *Johnson v. MCF - St. Cloud*, No. CV 22-1299 (JRT/BRT), 2022 WL 17723807, at *6 (D. Minn. Nov. 10, 2022), *report and recommendation adopted sub nom. Johnson v. MCF-St. Cloud*, No. CV 22-1299 (JRT/LIB), 2022 WL 17721510 (D. Minn. Dec. 15, 2022) (citing *Kendrick v. Faust*, No. 1:07CV00025JMMBD, 2009 WL 1972249, at *2 (E.D. Ark. July 8, 2009) ("Finally, several of Plaintiff's requests, including the termination of certain Defendants' employment from the ADC, are matters to be decided by prison personnel, not the courts."); *Nicholas v. Heffner*, 228 F. App'x 139, 141 (3rd Cir. 2007) ("The remaining relief requested is not available as the District Court lacks authority to order . . . the termination of [the defendants'] employment."); *Theriot v. Woods*, No. 2:09-CV-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "frivolous," "entirely improper," and "not available under 42 U.S.C. § 1983" as the court "has no

authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]")). Accordingly, Plaintiff is not entitled to injunctive relief in the form of Gregg's termination.

In addition, Plaintiff's requests for prospective relief related to his prison conditions of confinement are limited to an order correcting the violation. *See Kimbrough v. Hogan*, No. 8:23CV64, 2024 WL 837168, at *3 (D. Neb. Feb. 28, 2024) (citing 18 U.S.C. § 3626 and cases). Prospective relief is defined as including "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). Therefore, the Court cannot grant Plaintiff's request to cancel PCC's ICE contract as such relief bears no discernible relationship to Plaintiff's claims.

## IV.  OTHER PENDING MOTION

On December 5, 2024, Plaintiff filed notice of his updated address and a motion requesting any correspondence sent from the Court after October 25, 2024, be resent to his updated address or, if none was sent, the Court inform Plaintiff of such for his own records. Filing No. 13. Construing Plaintiff's motion as one for status, the motion is granted. Plaintiff is advised that the Court did not send any correspondence to Plaintiff after October 25, 2024, and this Memorandum and Order will be the first document sent to Plaintiff since that date.

## V.  CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief against Defendants and is subject to dismissal under 28 U.S.C. § 1915(e)(2). On the Court's own motion, Plaintiff will be given 30 days to amend his Complaint to allege sufficient facts to state plausible claims for relief under 42 U.S.C. § 1983 and/or the ADA against the County and Gregg in her official and/or individual capacity. However, Plaintiff's claims against PCC

and his claims for prospective relief will be dismissed without prejudice and without leave to amend. In his amended complaint, Plaintiff should be mindful to explain what each Defendant did to him, when the Defendant did it, and how the Defendants' actions harmed him.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Leave to Proceed in Forma Pauperis, Filing No. 12, is granted, and Plaintiff is given leave to proceed in forma pauperis as a non-prisoner. The Clerk of the Court is directed to update the Court's records to reflect that Plaintiff is no longer liable for the remaining balance of the filing fee.

2. Plaintiff's motion, Filing No. 13, construed as a motion for status, is granted consistent with this Memorandum and Order.

3. Plaintiff's claims against Phelps County Corrections and his claims for prospective relief are dismissed without prejudice and without leave to amend. The Clerk of the Court is directed to remove Phelps County Corrections as a defendant in this case.

4. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

5. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

6. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

7. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

8. The Clerk of Court is directed to set a pro se case management deadline using the following text: **May 29, 2025**: check for amended complaint.

Dated this 29th day of April, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge